EMPIRE LABORATORY SUPPLY CO., INC. *v.* UNITED STATES (No. 3712)[1]

[1] T. D. 47138.

United States Court of Customs and Patent Appeals, May 21, 1934

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell, Hugo P. Geisler*, and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument February 14 ,1934, by Mr. Place and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain glass bottles and jars, some imported under the Tariff Act of 1922, and others under the Tariff Act of 1930, dutiable as assessed by the collector at the port of New York. Those imported under the Tariff Act of 1922 were assessed at 65 per centum ad valorem under paragraph 218 of that act, and those imported under the Tariff Act of 1930 were assessed at 85 per centum ad valorem under paragraph 218 (a) of that act.

The appeal involves three protests, which were consolidated for the purpose of the trial in the court below.

The merchandise involved in protest No. 291357–G (except that covered by entry No. 959124, as to which the protest was abandoned on the trial below) imported under the Tariff Act of 1922, is here claimed by appellant to be dutiable at the appropriate rate under paragraph 217 of that act. Other claims were made in that protest, but they are not relied upon here, and, therefore, will not be discussed.

The merchandise involved in protests Nos. 569034–G and 573693–G was imported under the Tariff Act of 1930. Appellant has here limited his claims, so far as that merchandise is concerned, to the 75 per centum ad valorem rate provided in paragraph 218 (e). It is here claimed by appellant that the merchandise covered by protest No. 569034–G is properly dutiable at 75 per centum ad valorem under paragraph 218 (e) of that act. Due to the fact that appellant did not claim in protest No. 573693–G that the merchandise covered thereby was dutiable at the 75 per centum ad valorem rate of duty, its claims therein being limited, so far as paragraph 218 (e) is concerned, to the 25 per centum ad valorem rate therein provided, and as there is no evidence of record to establish that any of such merchandise was "produced by automatic machine", the 25 per centum ad valorem rate being applicable only to merchandise so produced, counsel for appellant in their brief concede that, as to that merchandise, the judgment below should be affirmed.

Paragraphs 217 and 218 of the Tariff Act of 1922, so far as pertinent, read as follows:

PAR. 217. Plain green or colored, molded or pressed, and flint, lime, or lead glass bottles, vials, jars, and covered or uncovered demijohns, and carboys, any of the foregoing, filled or unfilled, not specially provided for, and whether their contents be dutiable or free (except such as contain merchandise subject to an ad valorem rate of duty, or to a rate of duty based in whole or in part upon the value thereof, which shall be dutiable at the rate applicable to their contents), shall pay duty as follows: If holding more than one pint, 1 cent per pound; if holding not more than one pint and not less than one-fourth of a pint, 1½ cents per pound; if holding less than one-fourth of a pint, 50 cents per gross: *Provided*, That the terms "bottles," "vials," "jars," "demijohns," and "carboys," as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations, and shall not include bottles for table service and thermostatic bottles.

PAR. 218. Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, utensils, tubing, and rods, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all of the foregoing, finished or unfinished, composed wholly or in chief value of glass or paste, or a combination of glass and paste, 65 per centum ad valorem  *  *  *.

Subparagraphs (a) and (e) of paragraph 218 of the Tariff Act of 1930, so far as pertinent to the issues here, read:

PAR. 218. (a) Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except such articles provided for in paragraph 217 or in subparagraph (e)), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem  .*  *  *.

*  *  *  *  *  *  *

(e) Bottles and jars, wholly or in chief value of glass, of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations; bottles, vials, and jars, wholly or in chief value of glass, fitted with or designed for use with ground-glass stoppers, when suitable for use and of the character ordinarily employed, for the holdng or transportation of merchandise; all the foregoing produced by automatic machine, 25 per centum ad valorem; otherwise produced, 75 per centum ad valorem. For the purposes of this subparagraph no regard shall be had to the method of manufacture of the stoppers or covers.

On the trial below, counsel for appellant introduced in evidence Exhibits 1, 2, Collective Exhibit 3, and Exhibit 4, as illustrative, except as to size, of the involved merchandise.

The court below, in an opinion by Sullivan, J., fully and accurately described Exhibits 1, 2, and Collective Exhibit 3 as follows:

Exhibit 1 is a small bottle of clear uncolored glass with a round glass stopper. The inside of the neck of the bottle and the outside of the portion of the stopper that fits into the neck, are ground. This bottle is rather squat in appearance, and the particular sample in evidence is about 2¼ inches in diameter in the body which is of uniform diameter until it rounds at the top into the neck. The bot-

tom is about 3⅛ inches in height. The neck is about one inch in height and about three-fourths of an inch in diameter on the inside at the top, which tapers on the inside to a diameter of a trifle over half an inch. The stopper which is also tapered fits tightly into the neck of the bottle, and has a broad, round, flat top, projecting beyond the flaring lip at the top of the neck. Ground into the outside surface of the bottle are figures apparently indicating its capacity.

Exhibit 2 * * * appears to be more a jar than a bottle. Its dimensions slightly exceed those of Exhibit 1. The mouth of the neck is considerably wider, being a trifle over an inch and a half in inside diameter at the top, tapering slightly to the body of the jar, which is slightly under 1½ inches in diameter inside. The stopper is of the same character as that of Exhibit 1, but considerably wider. The inside of the neck and the outside of the stopper are ground in the same way as Exhibit 1, and the jar is made of the same character of glass.

* * * * * * *

Collective Exhibit 3 is a box-shaped article of clear glass with rounded corners, both on the sides and bottom, and having a lid or cover of clear glass. The upper edges of the container are ground, also the edges of the under side of the flat glass cover. The entire article with the lid thereon is 3⅞ inches high; 3¼ inches wide on its two widest sides, and about 2⅜ inches on the other two sides. The glass composing it is nearly three-sixteenths of an inch thick, as is the flat glass cover. The four corners and the corners of the bottom are rounded on the inside, as well as on the outside.

Exhibit 4 is a portion of page 356 taken from the catalogue of Arthur H. Thompson Co., of Philadelphia. It was introduced for the purpose of illustrating a part of the involved merchandise. The court below described the articles shown thereon as follows:

The illustrations on Exhibit 4, represent jars of various sizes, but all of the same shape. They are of somewhat the same appearance as Exhibit 2, except that the neck is larger in diameter in proportion to the body than the neck of Exhibit 3; also the stopper differs in that it appears to be entirely within the inside of the diameter of the jar, and has a rectangular knob by which it can be lifted or removed from the jar. The description under these illustrations is—"Jars, Standard specimens with extra wide mouth and stopper carefully ground in. For many years the standard American specimen jar."

On the trial in the court below, appellant called but one witness, Edwin C. Weiskopf, its president, who testified that appellant was in the laboratory supply business and sold the involved and like articles to laboratories, hospitals, schools, and colleges; and that he had found it necessary to acquaint himself with the uses of such articles. He stated that bottles of which Exhibit 1 is representative, including all sizes, were used in laboratories as containers of chemicals and dyes, and that he had never seen them used in any other place or for any other purpose; that bottles of which Exhibit 2 is representative, including all sizes, were used in laboratories as containers of dry chemicals; that the glass jars of which Collective Exhibit 3 is representative, including all sizes, were used in laboratories for holding specimens, such as plants, animals, or tissues, in alcohol, and that he had never seen them used for any purpose other than as containers for

such specimens; that the glass jars of which Exhibit 4 is illustrative, including all sizes, were used in laboratories as containers of specimens in the same manner as the jars of which Collective Exhibit 3 is representative. On cross-examination, the witness stated that, although the involved bottles were imported for other purposes not named, they were sold by his company exclusively for use in laboratories. He further stated:

X Q. These specimens that you spoke of in Collective Exhibit 3, you said that the top was sealed down. What is the idea of putting the specimens in there, if you know?—A. To store them, or to examine them.

X Q. And preserve them?—A. Yes, sir.

X Q. So that they are used in the laboratories in experimental work?—A. Yes, sir.

X Q. That is, as you use collective exhibit 3?—A. Yes, sir.

X Q. That is true also, is it, of *Collective* Exhibit 2?—A. Not exactly. It is to store. I would not say it is to preserve.

X Q. *And the preparations they put in there, the liquid; those are used in experiments that are performed in the laboratories?*—A. *The contents of the bottles is used in that way; yes.*

X Q. *That applies also to Exhibit 1 in all of its various sizes?*—A. *Yes, sir.*

X Q. That also would apply then to Exhibit 4?—A. Well, that is a specimen jar. It is used for storage purposes.

X Q. Those specimens are used for experiments in the laboratory?—A. I would not call them experiments.

X Q. What is the idea of having specimens in a laboratory, if they do not use them for experimenting?—A. For study. (Italics ours.)

Two witnesses, Edward Hagerthey and Clarence Corsen, testified for the Government.

The witness Hagerthey testified that he was then, and had been for 27 years, engaged in the manufacture and sale of glassware in the United States; that he manufactured and sold articles of which Exhibits 1, 2, and 4 are representative; that he also manufactured and sold articles of which Collective Exhibit 3 is representative, except that those which he manufactured and sold had a different top; that he sold such bottles and jars to laboratory supply houses, the United States Government, and to the city of New York and other municipalities; that they were used as containers for "Materials in a chemical laboratory, such as reagents." On cross-examination he stated that bottles, such as Exhibit 1, were used as containers for chemicals or combinations of chemicals for use in experimentation.

The witness Corsen testified that he was sales representative of the A. T. C. Wheaton & Co., which company was engaged in the glass business; that he had sold bottles, of which Exhibits 1 and 2 are representative, to the laboratory supply trade; that he had seen such articles used in laboratories for the purpose of "storing reagents and chemicals, and chemical solutions"; and that he had been familiar with the manufacture of such articles for a period of about 32 years. He further stated that the shape of the bottles, of which Exhibits 1 and

2 are representative, and the fact that the heads of the stoppers were large enough to cover and to protect their lips from dust, dirt, and other foreign substances, dedicated the bottles exclusively to laboratory uses. On cross-examination he said that he saw no reason why counsel for appellant, if he so desired, could not use bottles, of which Exhibit 1 is illustrative, in his bathroom as containers "for listerine or some liquid gargle prescriptions given to" him "by the doctor." He further stated that Exhibit 2 differed from Exhibit 1 in that it had a wider mouth, and that it was, for that reason, more adaptable for use as a container of dry substances, and that he knew of no reason why counsel for appellant might not use such a bottle as a container for Rochelle, or Epsom, salts, if he wished to do so.

It is claimed by counsel for appellant that the glass bottles and jars imported under the Tariff Act of 1922 were *eo nomine* provided for in paragraph 217 of that act; that they are not appliances or implements, and are, therefore, not excluded from paragraph 217 by virtue of the language "not as appliances or implements in chemical or other operations", contained therein, and, it is argued, "particularly is that true when those terms are considered in contrast with the term 'utensils'" contained in paragraph 218 of that act; and that as the imported articles are not used as appliances or implements in chemical or other operations, but are used solely as containers, they are properly dutiable under paragraph 217, *supra*, even if it be conceded that they are covered broadly by the language of paragraph 218 of that act.

Relative to the glass bottles and jars imported under the Tariff Act of 1930, counsel for appellant claim that the "parenthetical exception" contained in paragraph 218 (a) of that act, which reads "except such articles provided for in paragraph 217 or in subparagraph (e)", shows conclusively that the Congress intended that such glass bottles and jars should be classified under subparagraph (e) rather than under subparagraph (a) of paragraph 218. In support of that contention, it is argued that the Congress must have known that "biologists, chemists, pharmacists, surgeons, etc., use bottles and jars 'fitted with or designed for use with ground-glass stoppers' for containers merely, as distinguished from appliances or implements", and that the Congress clearly contemplated that there were glass articles "which would bring the provisions of subparagraphs (a) and (e) into conflict", otherwise "there is no sense to the exception."

It is contended by counsel for the Government that the glass bottles and jars here involved are not "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise", within the meaning of that language as used in paragraph 217 of the Tariff Act of 1922, and in subparagraph (e) of paragraph 218 of the Tariff Act of 1930, and that the evidence in the case fully sustains the judgment of the court below.

It is clear from the evidence in the case that the bottles and jars of which Exhibits 1, 2, Collective Exhibit 3, and Exhibit 4 are representative are sold for use exclusively in laboratories.

It appears from the testimony of appellant's witness, Edwin C. Weiskopf, that the bottles of which Exhibits 1 and 2 are representative, including all sizes, are used in laboratories as containers of chemicals and dyes, which are used in performing experiments.

The witnesses for the Government each testified that such bottles were used as containers for reagents. The witness Corsen, who testified for the Government, stated that, because of their shape and the character of their stoppers, they were dedicated exclusively to laboratory uses.

There is nothing of record to indicate that the bottles of which Exhibits 1 and 2 are representative were ever used for other than laboratory purposes, nor that they are "of the character ordinarily employed for the holding or transportation of merchandise", within the meaning of that language as used in paragraph 217 of the act of 1922 and in subparagraph (e) of paragraph 218 of the act of 1930. Furthermore, under the definition of the term "bottle", which is defined in Webster's New International Dictionary as "A hollow vessel, usually of glass or earthenware, with a comparatively narrow neck or mouth and without handles", we find illustrations of "Chemical Bottles", some of which are substantially of the same shape as the bottles here involved.

In the Summary of Tariff Information, 1929, on the Tariff Act of 1922, compiled by the Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, at page 508, we find the following relative to paragraph 218 of that act:

* * * Scientific and chemical glassware includes both blown and pressed ware, such as flasks, beakers, tubing, *reagent bottles, other blown articles for like uses,* and blanks for volumetric ware. (Italics ours.)

Relative to paragraph 217, at page 504, the Tariff Commission said:

* * * The glass bottles and other glass containers covered by this paragraph *are the usual and ordinary glass containers* used for beverages, foodstuffs, chemicals, medicines, vaccines, antitoxins, and other commodities, such as scouring and cleansing creams, powders, polishes, and soaps.

These glass bottles and other containers are generally made from the comparatively inexpensive grades of lime glass, but containers for certain acids or chemicals may require a special glass. (Italics ours.)

From the report of the Tariff Commission, and from facts of which we may take judicial notice, it is evident that the "usual and ordinary glass containers" may be used as containers of chemicals, medicines, etc. It is equally true, nevertheless, not only from the legislative history, but also from the language of paragraphs 217 and 218 of the Tariff Act of 1922, and subparagraphs (a) and (e) of paragraph 218 of the Tariff Act of 1930, that the Congress intended that bottles,

jars, and other glass articles, if of the character of biological or chemical utensils, such as reagent bottles, and other glass bottles and jars having like uses, should be classified under paragraph 218, if imported under the act of 1922, or under paragraph 218 (a), if imported under the Tariff Act of 1930, and that such articles were not contemplated by the Congress as being of the "character ordinarily employed for the holding or transportation of merchandise", within the meaning of that language as used in paragraph 217 of the act of 1922, and subparagraph (e) of paragraph 218 of the act of 1930.

The term "reagent" is defined in Webster's New International Dictionary as "Any substance which, by reason of its capacity for taking part in certain reactions, is used in detecting, examining, or measuring other substances, in preparing material, etc."

From the foregoing considerations it is evident, we think, that the involved merchandise, of which Exhibits 1 and 2 are representative, is reagent bottles; that the bottles are not "of the character ordinarily employed for the holding or transportation of merchandise," and are, therefore, not provided for in paragraph 217 of the Tariff Act of 1922, nor in subparagraph (e) of paragraph 218 of the act of 1930.

It appears from the testimony of appellant's witness, Weiskopf, that the jars, of which Collective Exhibit 3 and Exhibit 4 are representative, are "specimen jars", and are sold by his company for use exclusively in laboratories as containers of specimens, such as plants, animals, or tissues, in alcohol.

The witness Edward Hagerthey, who testified for the Government, said that the jars were used for storing "Materials in a chemical laboratory, such as reagents."

Assuming, for the purpose of this case, that the glass jars here involved are "specimen jars", used in laboratories, as stated by the witness Weiskopf, "to store specimens" or "to examine them", and "to preserve them", there being no evidence of record to establish that they are "of the character ordinarily employed for the holding or transportation of merchandise," within the meaning of that language as used in paragraph 217 of the act of 1922, and in subparagraph (e) of paragraph 218 of the Tariff Act of 1930, we are unable to hold that they were wrongly classified by the collector. See *United States* v. *Kimball Dental Mfg. Co.*, 19 C.C.P.A. (Customs) 353, T.D. 45501, where we were confronted with a somewhat similar situation.

With reference to the argument of counsel for appellant that the involved articles are not appliances or implements, within the common meaning of those terms, and were, therefore, not intended by the Congress to be excluded from paragraph 217 of the act of 1922, nor from subparagraph (e) of paragraph 218 of the act of 1930, we may say that the definition of the term "appliance" is a rather broad one and means "A thing applied or used as a means to an end;

apparatus; device; as, to use a mechanical *appliance*", and that the term implies "utility for a given purpose." See definitions of the terms "appliance" and "device" in Webster's New International Dictionary.

Furthermore, the terms "utensil" and "implement" are frequently used interchangeably. See *Frank P. Dow Co., Inc.* v. *United States*, 21 C.C.P.A. (Customs) 282, T.D. 46816.

For the reasons herein stated, we are of opinion that, on the record before it, the court below reached the right conclusion. Its judgment is, therefore, *affirmed*.